**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                                  :
WILLIAM M. BROWNSTEIN,           :
                                                  :
            Plaintiff,                          :
                                                  :        Civil Action No. 05-2257 (JAG)
            v.                                   :
                                                  :                **OPINION**
JO ANNE B. BARNHART,               :
COMMISSIONER OF SOCIAL         :
SECURITY,                                  :
                                                  :
            Defendant.                       :
_____:


**GREENAWAY, JR., U.S.D.J.**

        This matter comes before this Court on plaintiff William Brownstein's ("Plaintiff")

action, pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner of Social Security's

("Commissioner") decision denying Plaintiff's application for Social Security Disability

Insurance Benefits ("DIB")[1] and Supplemental Security Income ("SSI").[2]  (Tr. 14, 30-34.)[3]

---

[1] Disability Insurance Benefits are awarded only when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  20 C.F.R. § 404.1520.

[2] Supplemental Security Income is a national program that provides supplemental security income to individuals who have attained age 65 or are blind or disabled.  42 U.S.C. § 1381.

[3] "As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based."  42 U.S.C. § 405.  "Tr." refers to that transcript.

Plaintiff contends that the Commissioner's decision was in error because substantial evidence exists in the record to support a claim of disability. For the reasons set forth in this Opinion, this Court affirms the final decision of the Commissioner denying Plaintiff's application.

## I. PROCEDURAL HISTORY

In February 2003, Plaintiff applied for DIB and SSI, claiming disability dating to February 10, 2002. (Tr. 43-45, 145-46.) The Social Security Administration initially denied Plaintiff's application in June 2003 (Tr. 20-27), and denied it again, upon reconsideration, on October 9, 2003 (Tr. 30-34). On October 15, 2004, Plaintiff appeared before Administrative Law Judge Dean W. Determan ("ALJ Determan") for a hearing. (Tr. 163-90.) On October 29, 2004, ALJ Determan issued a written decision denying benefits. (Tr. 14-19.) A summary of the ALJ's findings is, as follows:

1.  The claimant meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since February 10, 2002.

3.  The claimant's depression and anxiety are considered [a] 'severe' impairment, based upon the requirements in the Regulations (20 C.F.R. §§ 404.1520 and 416.920).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set-forth [sic] in the body of this decision.

6.  The claimant has the residual functional capacity to perform the exertion demands of medium work.

7.  The claimant has had, at all times, the residual functional capacity to perform his past relevant work as a driver.

8.  The claimant's past relevant work as a driver did not require the performance of work-related activities precluded by his residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

2

9.  The claimant's medically determinable depression does not prevent the claimant from performing his past relevant work.
10. The claimant was not under a 'disability' as defined in the Social Security Act, at any time through the date of the decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

(Tr. 19.)

Based on these findings, ALJ Determan decided that Plaintiff was "not entitled to a period of disability, Disability Insurance Benefits, and not eligible for Supplemental Security Income payments under Sections 216(i), 223, 1602, and 1614(a)(3)(A) respectively, of the Social Security Act." (Id.)  Plaintiff sought Appeals Council review, which was denied in January 2005. (Tr. 6-9.)  Subsequently, Plaintiff sought review in this Court in April 2005, pursuant to 42 U.S.C. § 405(g).

## II. STATEMENT OF FACTS

### A.   Background

Plaintiff, William Brownstein, was born on March 4, 1963.  (Tr. 69.)  He graduated from high school and then completed a six-month training program in radio announcing.  (Tr. 79.) Plaintiff worked as a radio announcer from 1982 to 1987.  (Id.)  Since then, he has held numerous jobs – most often in positions involving telemarketing and driving.  (Tr. 72.)  In 1996, Plaintiff was convicted of a felony – endangering the welfare of minors.  (Tr. 35, 112.)  He had supplied minors with alcohol and had shown them pornography in his home.  (Id.)  He was sentenced to five years probation and required to register as a sex offender.  (Tr. 180.)

His most recent employment was as a limousine driver, mainly driving people to the airport.  (Tr. 72-73.)  His duties required him to lift suitcases weighing 20-50 pounds, and interact with dispatchers and customers.  (Id.)  Plaintiff's employment in this position ended sometime in February of 2002.  (Tr. 60.)  He claims he is disabled because he has difficulty

relating to others and controlling his anger.  (Tr.  28.)  He attributes his inability to hold a job for

substantial periods of time to mood swings, depression, and anxiety.  (Tr. 60.)  He also has

trouble sleeping, which he attributes to needing a new mattress.  (Tr. 138.)

**B.**     **Medical Evidence**

The record includes the reports of several mental health professionals who evaluated

Plaintiff.

**1.**     **Roberto Sozzi, M.D.**

Dr. Sozzi evaluated Plaintiff on April 16, 2003 at the request of the State agency.  (Tr.

14.)  In his personal history, Plaintiff described himself as a loner, having always had trouble

relating to people.  (Tr. 114.)  Dr. Sozzi reported that Plaintiff had been receiving counseling for

a number of years, and had never taken any medication for his social anxiety.  (Id.)  Plaintiff told

Dr. Sozzi that he avoids social contact, but was continuing to look for a job that would allow him

to stay away from people.  (Tr. 113.)  Dr. Sozzi found "social anxiety evident," and Plaintiff's

"affect[4] was intense, constricted[5] [and] poorly modulated."  (Id.)  Plaintiff's speech was mostly

coherent and appropriate, and Dr. Sozzi found no evidence of hallucinations, delusions, or

obsessive compulsive behavior.  (Id.)  Dr. Sozzi diagnosed Plaintiff as having a social anxiety

---

[4] Affect is defined as "[a] pattern of observable behaviors that is the expression of a subjectively experienced feeling state (emotion) . . . In contrast to *mood*, which refers more to pervasive and sustained emotional 'climate,' *affect* refers to more fluctuating changes in emotional 'weather.'"  Diagnostic and Statistical Manual of Mental Disorders 819 (4th ed. 2000) [hereinafter "DSM-IV"].

[5] Categorized as a "disturbance in affect," constricted is defined as a "mild reduction in the range and intensity of emotional expression."  DSM-IV at 819.

disorder[6] with an underlying severe schizoid personality disorder.[7]  (Id.)

### 2.   Ina B. Weitzman, Ph.D.

Dr. Weitzman evaluated Plaintiff on June 17, 2003.  (Tr. 115-33.)  Dr. Weitzman found no significant limitations on Plaintiff's understanding and memory.  (Tr. 116.)  Plaintiff's social interaction and sustained concentration and persistence were overall not significantly limited, though Plaintiff's ability to interact appropriately with the general public was rated as "Markedly Limited."  (Tr. 116-17.)  Plaintiff has mild limitation in performing the activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.  (Tr. 130.)  Dr. Weitzman diagnosed Plaintiff with social anxiety disorder and schizoid personality, and concluded Plaintiff is "able to do work that requires minimal social interaction."  (Tr. 118.)

### 3.   Jennifer Douglas-Kruk

Plaintiff sought treatment at St. Mary's Hospital Behavioral Health Outpatient Services ("St. Mary's") upon the suggestion of his attorney.  (Tr. 138.)  Ms. Douglas-Kruk is a counselor at St. Mary's and she conducted an intake assessment on March 29, 2004.  (Tr. 137-43.)  Plaintiff indicated that he had no primary physician, and no history of psychiatric hospitalization or

---

[6] Also known as "Social Phobia," "the essential feature [of social anxiety disorder] is a marked and persistent fear of social or performance situations in which embarrassment may occur." DSM-IV at 450.  "Most often, the social or performance situation is avoided, although it is sometimes endured with dread." Id.  See generally id. at 450-56.

[7] "The essential feature of Schizoid Personality Disorder ('SPD') is a pervasive pattern of detachment from social relationships and a restricted range of expression of emotions in interpersonal settings." DSM-IV at 694.  "Individuals with SPD appear to lack a desire for intimacy. . . . They prefer spending time by themselves, rather than being with other people. . . . They prefer mechanical or abstract tasks, such as computer or mathematical games." Id.  See generally id. at 694-97.

medication.  (Tr. 138.)  He said his appetite was good and his sleeping difficulties may be attributable to needing a new mattress.  (Id.)  As to Plaintiff's mental status, Ms. Douglas-Kruk observed his mood was relaxed and comfortable, and his affect was congruent.  (Tr. 140.)  His speech was coherent and clear.  (Id.)  His thought process was organized and goal-directed, (id.) and his concentration was fair.  (Tr. 141.)  Plaintiff's immediate memory was fair and remote memory was good, and he was fully oriented.  (Id.)

Ms. Douglas-Kruk also observed Plaintiff's insight was fair and judgment was intact, at present.  (Id.)  On the DSM-IV multiaxial scale,[8] Ms. Douglas-Kruk diagnosed social phobia on Axis I, antisocial personality disorder on Axis II, and a global assessment of functioning ("GAF") score of 55 on Axis V.[9]  (Id.)

### 4.    Yesh Dhaibar, M.D.

Dr. Dhaibar, a psychiatrist at St. Mary's, performed an initial psychiatric evaluation on April 16, 2004.  (Tr. 134-36.)  Plaintiff told Dr. Dhaibar that he had been unable to secure a job for two or three years and had trouble with relationships.  (Tr. 134.)  He described his sleep as "not so good" because his bed was uncomfortable.  (Id.)  Dr. Dhaibar observed Plaintiff's mental

---

[8] The DSM-IV multiaxial scale is "a multiaxial system involv[ing] an assessment on several axes, each of which refers to a different domain of information that may help the clinician plan treatment and predict outcome."  DSM-IV at 27.  The five axes in the DSM-IV multiaxial classification are: Axis I: Clinical Disorders; Axis II: Personality Disorders; Axis III: General Medical Conditions; Axis IV: Psychosocial and Environmental Problems; and Axis V: Global Assessment of Functioning.  Id.  See generally id. 27-36.

[9] "Axis V is for reporting the clinician's judgment of the individual's overall level of functioning."  DSM-IV at 32.  The GAF scale takes into account only psychological, social, and occupational functioning, divided into ten 10-point ranges.  Id.  A GAF score of 55 falls into the 51-60 range, which denotes "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers."  Id. at 34.

status as "alert and oriented times three." (Tr. 135.) Plaintiff's affect was a bit anxious, and

"speech at times was a wee bit rapid," logical, and goal-oriented. (Id.) No suicidal or homicidal

ideations, no auditory or visual hallucinations, and no delusions were reported. (Id.) Plaintiff's

memory and concentration were fair, as well as his judgment and insight. (Id.) On the DSM-IV

multiaxial scale, Dr. Dhaibar diagnosed "pedophilia,[10] adjustment disorder with anxious and

depressed mood,[11] rule out generalized anxiety disorder, and rule out post-traumatic stress

disorder" on Axis I, "Avoidant personality traits"[12] on Axis II, and a GAF score of 65 on Axis

V.[13] (Id.)

### 5. Sheldon S. Libby, LCSW, DCSW

Mr. Libby is listed on Plaintiff's Request for Hearing form as his "former therapist." (Tr.

35.) Plaintiff stated that the reason for his visit with Mr. Libby was "for counseling because of a

---

[10] "The paraphilic focus of Pedophilia involves sexual activity with a prepubescent child (generally age 13 years or younger)." DSM-IV at 571. "Individuals who have a pedophilic arousal pattern and act on these fantasies or urges with a child qualify for the diagnosis of Pedophilia." Id. See generally DSM-IV at 571-72.

[11] An adjustment disorder involves a "psychological response to an identifiable stressor or stressors that results in the development of clinically significant emotional or behavioral symptoms." DSM-IV at 679-80. "Adjustment Disorders are coded according to the subtype that best characterizes the predominant symptoms." Id. The subtype diagnosed here, with anxiety and depressed mood, is used when the predominant manifestation is a mixture of anxiety (symptoms such as nervousness, worry, or jitteriness), and depression (symptoms such as depressed mood, tearfulness, or feelings of hopelessness). Id.

[12] Avoidant personalities experience "social inhibition, feelings of inadequacy, and hypersensitivity to negative evaluation that begins by early adulthood and is present in a variety of contexts." DSM-IV at 718. These traits overlap with two of Plaintiff's other diagnosed conditions, Social Phobia and Schizoid Personality Disorder. Id. at 720.

[13] This GAF score falls within the designated 61-70 range, characterized by "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

criminal conviction." (Tr. 62.)  Plaintiff stated that he did not know the date of the first visit, but that the last visit was in April of 1991.  (Id.)  It is unclear whether this is an incorrect date or whether Plaintiff was convicted of an earlier crime in addition to the 1996 conviction.  No further evidence appears in the record regarding this treatment.


## III. DISCUSSION

### A.    Standard of Review

This Court has jurisdiction to review the Commissioner's decision, pursuant to 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard, 841 F.2d at 59).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).  Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

8

In the determination of whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). Where there is substantial evidence to support the Commissioner's decision, it is of no consequence that the record contains evidence which may also support a different conclusion.  Blalock, 483 F.2d at 775.

**B.**     **Statutory Standards**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. § 423(d)(5).  To qualify for DIB or SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled."  42 U.S.C. § 1381.  A claimant is deemed "disabled" under the Act if he is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); see also Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987). Disability is predicated on whether a claimant's impairment is so severe that he "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); see also Nance v. Barnhart, 194 F. Supp. 2d 302, 316 (D. Del. 2002). Finally, while subjective complaints of pain are considered, alone, they are not enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  An impairment only qualifies as a disability if it

9

"results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

**C.**   **The Five Step Evaluation Process and the Burden of Proof**

Determinations of disability are made by the Commissioner, pursuant to the five-step process outlined in 20 C.F.R. § 404.1520.  At the first step of the review, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.[14]  20 C.F.R. § 404.1520(b).  If the claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  Id.; Bowen v. Yuckert, 482 U.S. 137, 141 (1987).

At step two, the Commissioner must determine whether the claimant suffers from a severe impairment.  20 C.F.R. § 404.1520(a)(ii)(c).  An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  Id.  In determining whether the claimant has a severe impairment, the age, education, and work experience of the claimant will not be considered.  See id.  If the claimant is found to have a severe impairment, the Commissioner addresses step three of the process.

At step three, the Commissioner compares the medical evidence of the claimant's impairment(s) with the impairments presumed severe enough to preclude any gainful work, listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  See 20 C.F.R. § 404.1594(f)(2).  If the claimant's impairment(s) meets or equals one of the listed impairments, he will be found disabled under the Social Security Act.  If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

---

[14] Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit."  20 C.F.R. § 404.1510.

In Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20, 120 n.2 (3d Cir. 2000), the Third Circuit found that to deny a claim at step three, the ALJ must specify which listings[15] apply and give reasons why those listings are not met or equaled.  In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Third Circuit noted that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  (Id.)  An ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant Listing." Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 471 (3d Cir. 2005).

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work.  20 C.F.R. § 404.1520(e).  If the claimant is able to perform his past relevant work, he will not be found disabled under the Act.  In Burnett, the Third Circuit set forth the analysis at step four:

> In step four, the ALJ must determine whether a claimant's residual functional capacity enables her to perform her past relevant work. This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

Burnett, 220 F.3d at 120.  If the claimant is unable to resume his past work, and his condition is deemed "severe," yet not listed, the evaluation moves to the final step.

At the fifth step, the burden of production shifts to the Commissioner, who must

---

[15] Hereinafter "Listing" refers to the list of severe impairments as found in 20 C.F.R. Part 404, Subpart P, Appendix 1.

demonstrate that there are other jobs existing in significant numbers in the national economy

which the claimant can perform, consistent with his medical impairments, age, education, past

work experience, and residual functional capacity.  20 C.F.R. § 404.1560(c)(1).  If the ALJ finds

a significant number of jobs that the claimant can perform, the claimant will not be found

disabled.  Id.

When the claimant has only exertional limitations, the Commissioner may utilize the

Medical-Vocational Guidelines found in 20 C.F.R. Part 404, Subpart P, Appendix 2 to meet the

burden of establishing the existence of jobs in the national economy.  These guidelines dictate a

result of "disabled" or "not disabled" according to combinations of vocational factors, such as

age, education level, work history, and residual functional capacity.  These guidelines reflect the

administrative notice taken of the jobs in the national economy that exist for particular

combinations of vocational factors.  20 C.F.R. pt. 404, subpt. P, app. 2, para. 200.00(b).  When a

claimant's vocational factors, as determined in the preceding steps of the evaluation, coincide

with a combination listed in Appendix 2, the guideline directs a conclusion as to whether an

individual is disabled.  20 C.F.R. § 404.1569; Heckler v. Campbell, 461 U.S. 458, 462 (1983).

The claimant may rebut any finding of fact as to a vocational factor.  20 C.F.R. pt. 404, subpt. P,

app. 2, para. 200.00(b).

Additionally, pursuant to 42 U.S.C. § 423(d)(2)(B), the Commissioner "must analyze the

cumulative effect of the claimant's impairments in determining whether she is capable of

performing work and is not disabled."  Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).

Moreover, "the combined impact of the impairments will be considered throughout the disability

determination process."  42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 1523; Parker v. Barnhart, 244 F.

Supp. 2d 360, 369 (D. Del. 2003).  However, the burden still remains on the Plaintiff to prove

that the impairments in combination are severe enough to qualify him for benefits.  See Williams v. Barnhart, 87 F. App'x 240, 243 (3d Cir. 2004) (placing responsibility on the claimant to show how a combination-effects analysis would have resulted in a qualifying disability); see also Marcus v. Barnhart, No. 02-3714, 2003 WL 22016801, at *2 (E.D. Pa. Jun. 10, 2003) (stating that "the burden was on [Plaintiff] to show that the combined effect of her impairments limited one of the basic work abilities").

While Burnett involved a decision in which the ALJ's explanation of his step three determination was so inadequate as to be beyond meaningful judicial review, the Third Circuit applies its procedural requirements, as well as their interpretation in Jones, to every step of the decision.  See, e.g., Rivera v. Commissioner, 164 F. App'x 260, 262 (3d Cir. 2006).  Thus, at every step, "the ALJ's decision must include sufficient evidence and analysis to allow for meaningful judicial review," but need not "adhere to a particular format."  Id.

**D.      Subjective Complaints of Pain**

An ALJ may not ignore a claimant's subjective complaints of pain when evaluating a disability claim.  Dorf v. Bowen, 794 F.2d 896, 902 (3d Cir. 1986).  Although there must be objective medical evidence of a condition which could produce pain, objective evidence of pain itself is not required.  Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984).  The Third Circuit requires:

> (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain "may support a claim for disability benefits" and "may be disabling;" (3) that when such complaints are supported by medical evidence, they should be given great weight; (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence.

Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (citations omitted).  An individual's

description of his or her pain or symptoms, although relevant, is not conclusive in itself. 42

U.S.C. § 423(d)(5)(A); see 20 C.F.R. § 404.1529(b) (stating that symptoms alone "will not be

found to affect [the claimant's] ability to do basic work activities unless medical signs or

laboratory findings show that a medically determinable impairment(s) is present"); Sassone v.

Comm'r of Soc. Sec., 165 F. App'x 954, 956 (3d Cir. 2006).

**E.      Seven Part Test for Considering Pain**

According to Social Security Ruling 96-7p and 20 C.F.R. § 404.1529, and § 416.929, the

seven factors used to evaluate a claimant's allegation of pain are: "(i) the extent of daily

activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii)

precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any

medication; (v) treatment other than medication for the symptoms; (vi) measures used to relieve

pain or other symptoms; and (vii) other factors concerning functional limitations and restrictions

due to pain or other symptoms." Canales v. Barnhart, 308 F. Supp. 2d 523, 527 n.4 (E.D. Pa.

2004).

**F.      Weight Accorded to Evidence**

The Commissioner considers all submitted opinions to evaluate a claim for disability

benefits. If the medical evidence presented is inconsistent, then the evidence will be weighed in

order to reach a decision. See 20 C.F.R. § 404.1527. The highest quantum of weight is accorded

to medical opinions of the treating physicians. In reviewing a decision by the Commissioner, "a

court gives greater weight to the findings of a treating physician than to the findings of a

physician who has examined a claimant only once or not at all." Mason v. Shalala, 994 F.2d

1058, 1067 (3d Cir. 1993). Controlling weight is given when a treating physician's opinion is

"well supported by medically acceptable clinical and laboratory diagnostic techniques and is not

14

inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(d)(2).  When a treating physician's opinion is not "well supported" the length and frequency of treatment is considered. The more frequently examined and closely followed a claimant has been, the greater weight his attending doctor's opinion will carry.  The more evidence produced in support of a medical opinion and consistency with the entire record, generally the greater the weight it will receive regardless of whether the physician is a specialist.  20 C.F.R. §§ 404.1527(d)(3)-(5).

**G.    ALJ Determan's Findings**

ALJ Determan performed the five-step sequential evaluation process provided in 20 C.F.R. §§ 404.1520 and 416.920, and concluded that Plaintiff was not disabled.  (Tr. 16.)

*1. Step One*

ALJ Determan found that Plaintiff satisfied step one of the evaluation because there was no evidence to refute Plaintiff's claim that he has not "engaged in substantial gainful activity since February 10, 2002."  (Id.)

*2. Step Two*

ALJ Determan found that Plaintiff suffered from depression and anxiety.  (Id. at 19.) These impairments are considered "severe" under 20 C.F.R. §§ 404.1520 and 416.920.  (Id.)

*3. Step Three*

ALJ Determan found that Plaintiff's impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (Id.)

*4. Step Four*

ALJ Determan found that Planitiff retains the residual functional capacity to perform medium work.  (Tr. 18.)  This conclusion was based on Plaintiff's capability to lift and carry "up to fifty pounds occasionally and twenty pounds frequently; and in the course of an eight-hour

workday, he can sit, stand or walk up to six hours." (Id.)  ALJ Determan determined that

Plaintiff retains the residual functional capacity to perform the medium work required by his past

relevant work as a driver.  (Id.)

### 5. Step Five

ALJ Determan was not required to perform the fifth step in the evaluation because he

determined at step four that Plaintiff retained the residual functional capacity to perform his past

relevant work as a driver.  (Id.)  In the alternative, however, ALJ Determan did conclude that

even if the assumption could be made that Plaintiff is no longer capable of working as a driver,

and the burden of proof shifted to the Administration to show that there are jobs existing in

significant numbers in the national economy to which "a successful vocational adjustment could

be made," Plaintiff's claim that he is "disabled" would still fail.  (Id.)

## IV. ANALYSIS

Plaintiff contends that "the substantial evidence in the administrative record establishes

entitlement and eligibility for and to the benefits applied for."  (Br. in Support of Pl. William

Brownstein [hereinafter "Pl.'s Br."] 18.)  Alternatively, Plaintiff argues that the ALJ's decision is

not based on substantial evidence of record.  (Id.)  Plaintiff disputes the ALJ's findings as to

exertional residual functional capacity.  (Id. at 19.)  Plaintiff further argues that under Cotter v.

Harris, 642 F.2d 700 (3d Cir. 1981), the ALJ's decision inadequately addressed certain evidence

and insufficiently explained certain findings, requiring remand for a new hearing and new

decision.  (Id. at 17-18.)  This Court finds that there is substantial evidence in the record to

support ALJ Determan's decision, and his decision shall be affirmed.

## A.   Finding of Medium Exertional RFC Does Not Reflect an Exertional Impairment.

Plaintiff argues that because the ALJ found that Plaintiff could perform medium work

activity, as opposed to heavy work activity, Plaintiff is a fortiori exertionally impaired.  (Id. at 19.)  This argument is without merit.  To reach this conclusion, Plaintiff must assume a baseline exertional ability to do heavy work.  Indeed, Plaintiff claims "it is not possible to suffer no exertional impairment but nevertheless be reduced to medium work activity."  (Id.)

ALJ Determan found that Plaintiff retains the RFC to perform medium work, which, in part, is defined in the regulations as having the ability to lift and carry "up to fifty pounds occasionally and twenty pounds frequently."  (Tr. 18); see also 20 C.F.R. §§ 404.1567(c) and 416.967(c).   The heaviest lifting Plaintiff performed at any previous job, according to Plaintiff, was lifting twenty-pound suitcases regularly, and "[m]aybe 50 lbs.," as a limo driver.  (Tr. 73.)

Plaintiff has provided no evidence that he was capable of performing more than medium work at any point in his work history.  Plaintiff does not explain how one can be "reduced" to a level of exertional capacity which is equivalent to his prior level of exertional capacity. Therefore, despite Plaintiff's assertion that it is impossible, Plaintiff has suffered no exertional impairment that has reduced his RFC, and is capable of medium work duty.

**B.     Plaintiff Misconstrues Cotter v. Harris.**

Plaintiff asserts that "[c]learly, the _Cotter Doctrine_, stands for the dual insistence that: (1) the ALJ recite all the probative evidence in the administrative record whether or not that evidence supports or contradicts the Commissioner's conclusions and that: (2) the ALJ articulate a reasoned, judicially reviewable explanation for rejecting contradictory evidence."  (Pl.'s Br. 18.)

In Cotter, the administrative record reflected conflicting medical evidence and testimony concerning the severity of the claimant's heart condition.  642 F.2d at 707.  The Third Circuit held that the ALJ erred by failing to explain his reasons for rejecting equally probative medical

evidence and testimony supporting the claimant.  Id.  This evidence included two physicians'
recommendations that the claimant not return to his past relevant work.  Id.

Here, Plaintiff points to no conflicting medical testimony.  Rather, the instant case more
closely parallels the factual scenario in Wisniewski v. Comm'r of Soc. Sec., 210 F. App'x 177
(3d Cir. 2006).  The Court of Appeals in Wisniewski distinguished Cotter, saying, "[h]ere, there
is no conflict in the evidence that would require the administrative law judge to explain why he
was accepting certain evidence and rejecting other evidence. To the contrary, the administrative
law judge's opinion appropriately discussed the sequential evaluation process."  Id. at 179.  The
Court of Appeals went on to find that "[t]he administrative law judge examined the various
medical opinions and used the information and evidence presented therein to support his
conclusions. He thus considered all the relevant medical sources in the record. This
comprehensive review satisfies Cotter."  Id.

As in Wisniewski, here Plaintiff points to no conflict in the evidence set forth in the
administrative record that would require the ALJ to explain why he was accepting certain
evidence and rejecting other evidence.  First, none of the evidence in the medical testimony
supports Plaintiff's contention that he cannot work.  The reports of the three doctors and one
counselor who examined Plaintiff are essentially congruent, and none supports a finding of
disability.  (See Tr. 112-52.)  Further, ALJ Determan engaged in a comprehensive and accurate
evaluation of the medical evidence and testimony.  (Tr. 14-16.)  Each of ALJ Determan's
findings are explained and supported by evidence discussed in his opinion.  (Tr. 16-19.)

Finally, to the extent that Plaintiff's hearing testimony may have supported his claim,
ALJ Determan explained in his opinion that he found Plaintiff's own testimony not to be
credible, based primarily on Plaintiff's failure to present any medical evidence that supported his

18

alleged inability to work.  (Tr. 17.)

As for Plaintiff's assertion that Cotter requires a recitation of all probative evidence in the record, Plaintiff misstates the Court of Appeals's holding.  Cotter does not require that the ALJ recite all probative evidence in the record.  Cotter holds only that, where the record evidence conflicts, the ALJ must explain the reasons for accepting certain evidence and rejecting other evidence, particularly where the rejected evidence would support the claimant's position.  642 F.2d at 705.

In reaching this conclusion, the Court of Appeals reaffirmed the standard for a hearing examiner's opinion set forth in Baerga v. Richardson:

> In our view an examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.  This is necessary so that the court may properly exercise its responsibility under 42 U.S.C. § 405(g) to determine if the Secretary's decision is supported by substantial evidence.

500 F.2d 309, 312 (3d Cir. 1974).  The Cotter court further explained that Baerga led to the requirement that the hearing examiner "include subsidiary findings to support the ultimate findings."  642 F.2d at 705.  Ultimately, Cotter stands for the proposition that the ALJ must explain his findings, and, further, if an ALJ rejects probative, conflicting or uncontroverted evidence that supports the claimant, the ALJ must explain why.  Nothing in Cotter can be read to require an exhaustive recitation of all probative facts in the administrative record, the absence of which mandates reversal or remand for a new hearing.

Here, ALJ Determan's decision satisfies the requirement that an ALJ review all the material evidence available and use that evidence to support his conclusion, or explain why he is rejecting evidence that supports the plaintiff's claim.

19

C.    **Finding that Plaintiff's Conditions "Somewhat Diminish" Capacity for Medium Work is Supported by Substantial Evidence and Within Regulation Parameters.**

Plaintiff challenges ALJ Determan's conclusion that his non-exertional limitations of depression and anxiety "somewhat diminish" his capacity for medium work.  (Tr. 18.)  Plaintiff points to his diagnosed conditions from the record and draws the direct conclusion that his capacity for medium work must therefore be more than somewhat diminished.  (Pl.'s Br. 20.) Plaintiff further recites from the medical evidence several findings of moderate limitations in work capacity, but specifies none that have any impact on his ability to do medium work within the applicable definition.  (Pl.'s Br. 21.)

The ALJ's conclusion is supported by substantial evidence in the record, and moreover, no evidence exists in the record that contradicts this conclusion.  Both of Plaintiff's evaluations at St. Mary's concluded that Plaintiff has no greater than moderate symptoms and moderate difficulty in social situations.  (Tr. 134, 141.)  Dr. Weitzman found no significant limitations on Plaintiff's understanding, memory, social interaction, sustained concentration, and persistence. (Id. at 116-17.)  Only Plaintiff's ability to interact appropriately with the general public was rated as "[m]arkedly [l]imited."  (Id.)

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).  The category of "[l]ight [w]ork" additionally requires the ability to perform "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  None of these categories includes any criteria whatsoever pertaining to any type of social interaction which would be impacted by Plaintiff's limitations. Therefore, the ALJ's determination that Plaintiff's diagnosed limitations somewhat diminish

20

Plaintiff's capacity to do medium work is well supported by the record evidence and within the requirements of the regulations.

**D.      Finding that Plaintiff's Disorder Does Not Satisfy Any of The Psychiatric Listings in 20 C.F.R. § 404 Subpart P Appendix 1 is Supported by Substantial Evidence.**

Plaintiff disputes ALJ Determan's conclusion in step three of the evaluation that Plaintiff's mental disorders do not satisfy the psychiatric listings under 20 C.F.R. § 404 Subpart P, Appendix 1.  (Pl.'s Br. 21-26.)  Plaintiff argues that there is substantial evidence to support the opposite conclusion for sections 12.04, 12.06, and 12.08.  (Id.)  The burden is on Plaintiff to establish that his impairments satisfy the criteria set forth in the regulation.  42 U.S.C. § 423(d)(5).  In this case, there is no evidence in the record that would establish any of the listed impairments.

**1.  Listing 12.04: "Affective Disorders"**

According to Listing 12.04, affective disorders are "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.  Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation."  20 C.F.R. § 404 subpt. P, app. 1, sec. 12.04.

In order to satisfy Listing 12.04, the requirements of both subsections A and B must be satisfied, or the requirements of subsection C must be satisfied.  Id.  Subsection A defines three syndromes, requiring a medically documented persistence, either continuous or intermittent, in any one.  Id.

To qualify under syndrome 1, "depressive syndrome," Plaintiff must demonstrate at least four of the following criteria: "(a) Anhedonia or pervasive loss of interest in almost all activites; or (b) Appetite disturbance with change in weight; or (c) Sleep disturbance; or (d) Psychomotor agitation or retardation; or (e) Decreased energy; or (f) Feelings of guilt or worthlessness; or (g)

21

Difficulty concentrating or thinking; or (h) Thoughts of suicide; or (i)Hallucinations, delusions, or paranoid thinking." Id.

The only fact in the record that approximates any of these criteria is Plaintiff's own testimony at his hearing that he has trouble sleeping properly. (Tr. 170.) This claim is undermined by Plaintiff's earlier statements during evaluations at St. Mary's attributing his difficulty sleeping to "needing a new mattress" (id. at 138), and "an uncomfortable bed" (id. at 134). This fact is clearly noted in ALJ Determan's opinion. (Id. at 15.) Further, ALJ Determan found Plaintiff's allegations to be not credible. (Id. at 17.) Even if Plaintiff's difficulty sleeping was sufficient to satisfy the "sleep disturbance" criteria of "Depressive syndrome," that syndrome requires four criteria be fulfilled. 20 C.F.R. § 404 subpt. P, app. 1, sec. 12.04 Therefore, ALJ Determan's finding that Plaintiff did not satisfy this part of the Listing is supported by substantial evidence.

Syndrome 2, "manic syndrome," requires at least three of the following: "(a) Hyperactivity; or (b) Pressure of speech; or (c) Flight of ideas; or (d) Inflated self-esteem; or (e) Decreased need for sleep; or (f) Easy distractability; or (g) Involvement in activities that have a high probability of painful consequences which are not recognized; or (h) Hallucinations, delusions or paranoid thinking." Id. The medical evidence fails to establish any of these criteria as well.

Syndrome 3 is "bipolar syndrome." Id. This condition has not been diagnosed in any of Plaintiff's evaluations on the record. Listing 12.04(A)(3) requires a "history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)." Plaintiff established none of the criteria for either manic or depressive syndromes, and there is no evidence of a history of either.

Therefore, subsection A is not satisfied.  Because subsection B requires a showing of certain criteria which are a result of the syndromes in subsection A, a failure to satisfy subsection A results in a de facto failure to satisfy subsection B.

Listing 12.04 may alternatively be established under subsection C, if there is evidence of a "medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: repeated episodes of decompensation, each of extended duration; or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." Id.

Nothing in the record shows any decompensation, nor any residual disease processes. Likewise, there is no evidence of a need for, or the presence of, a highly supportive living environment.  Additionally, there is no evidence in the record of any medically documented history of an affective disorder lasting two years or more.  The requirements of subsection C are not satisfied, and, therefore, the requirements of Listing 12.04 are not met.  ALJ Determan's finding to that effect is supported by substantial evidence in the record, as well as the lack of substantial evidence in the record to support Plaintiff's claim.

### 2. Listing 12.06: "Anxiety Related Disorders"

Listing 12.06 encompasses Anxiety Related Disorders, in which "anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the

obsessions or compulsions in obsessive compulsive disorders."  20 C.F.R. pt. 404 subpt. P, app.

1.

Under Listing 12.06, the required level of severity is met when the requirements of both

subsections A and B are satisfied or when subsections A and C are satisfied.  Id.

In order to satisfy subsection A, one of five sets of conditions must be medically

documented.  Id.  Condition set 1 requires "generalized persistent anxiety" accompanied by three

out of a list of four signs or symptoms.  Id.  This record shows no diagnosis at any time of a

generalized persistent anxiety, so condition set 1 does not apply.  Condition set 2 requires "a

persistent irrational fear of a specific object, activity, or situation which results in a compelling

desire to avoid the dreaded object, activity, or situation."  Id.  Plaintiff's diagnoses of social

anxiety fail to describe his condition as including a "persistent irrational fear," and the DSM-IV

does not include that element anywhere in the definition of "Social Anxiety Disorder" or "Social

Phobia."[16]  Nowhere else in the record does evidence exist of "persistent irrational fear."

Therefore, condition set 2 does not apply.  Condition set 3 requires "recurrent severe panic

attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and

sense of impending doom occurring on the average of at least once a week."  Id.  Condition set 4

requires "recurrent obsessions or compulsions which are a source of marked distress."  Id.

Condition set 5 requires "recurrent and intrusive recollections of a traumatic experience, which

are a source of marked distress."  Id.

No evidence of any of these elements is shown in the record, so condition sets 3, 4, and 5

do not apply.  Therefore, Plaintiff has failed to meet the requirements of subsection A.  Because

Listing 12.06 requires both subsections A and B or subsections A and C to be satisfied, a failure

---

[16] See supra note 6.

to meet subsection A necessarily results in a failure to satisfy Listing 12.06.

Further, because subsections B and C require a showing of certain criteria which are a result of the conditions established in subsection A, a failure to satisfy subsection A results in a de facto failure to satisfy subsections B and C.  Id.  Therefore, Plaintiff has failed to establish any of the three subsections in Listing 12.06.  The record contains substantial evidence to support ALJ Determan's conclusion that Listing 12.06 does not apply.

### 3. 12.08 "Personality Disorders"

As defined by Listing 12.08, a "personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress.  Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness."  20 C.F.R. pt. 404 subpt. P, app. 1.

Satisfying Listing 12.08 requires the criteria in both subsections A and B to be met.  Id.  Subsection A requires a showing of "deeply ingrained, maladaptive patterns of behavior" associated with one of six accompanying elements.  Id.  Nowhere in the medical evidence is Plaintiff described as suffering from maladaptive patterns of behavior, deeply ingrained or otherwise.  In fact, Dr. Weitzman's evaluation rates all four aspects of Mr. Brownstein's "Adaptation" as "Not Significantly Limited."  (Tr. 117.)  Subsection B requires a showing of certain criteria which are a result of the condition described in Subsection A, so Plaintiff's failure to satisfy subsection A necessarily results in a failure to satisfy subsection B as well.  20 C.F.R. pt. 404 subpt. P, app. 1.  Therefore, ALJ Determan's finding that Plaintiff failed to satisfy Listing 12.08 is supported by substantial evidence.

**E.**     **Finding that Plaintiff's Past Relevant Work as a Driver is "Medium" Work is Supported by Substantial Evidence, Including Plaintiff's Own Testimony.**

Plaintiff disputes ALJ Determan's characterization of Plaintiff's past work as a limo driver as "medium" work.  This argument is without merit.  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).  According to Plaintiff's own statement, he was lifting twenty-pound suitcases, and "[m]aybe 50 lbs." as a limo driver.  (Tr. 73.)  None of the evidence presented by Plaintiff suggests any other categorization for this type of work.  Nor was the ALJ mistaken when he states that "the Dictionary of Occupational Titles ('DOT') classifies this type of work as medium, semi-skilled work."  (Tr. 18.)  ALJ Determan's finding as to the classification of Plaintiff's previous relevant work is supported by substantial record evidence.

**CONCLUSION**

For the reasons stated above, this Court finds that the Commissioner's decision is supported by substantial evidence.  The Commissioner's decision is affirmed.

       S/Joseph A. Greenaway, Jr.
       JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: October 26, 2009